**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANGELICA RATTUNDE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 23 C 14706 |
| v. | Honorable Sunil R. Harjani |
| SCORES CHICAGO GENTLEMAN'S CLUB, | |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Angelica Rattunde brings this class action lawsuit asserting four counts against her employer Scores Chicago Gentleman's Club for: (1) failure to pay minimum wages in violation of the Fair Labor Standards Act; (2) failure to pay minimum wages under 820 Ill. Comp. Stat. 105/1, *et seq.*; (3) failure to pay wages and illegal deductions under 820 Ill. Comp. Stat. 115/1, *et seq.*; and (4) violation of the Illinois Gender Violence Act, 740 Ill. Comp. Stat. 82/1, *et seq.* After the Complaint was filed, three additional individuals filed opt-in consent forms pursuant to 29 U.S.C. § 216. Defendant now brings three separate motions to compel Plaintiff and the three opt-ins[1] to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-4, and dismiss the complaint pursuant to Federal Rule Civil Procedure 12(b)(3) or, alternatively, stay the proceeding pending arbitration pursuant to 9 U.S.C. § 3. Docs. [8][24][41]. Since the Illinois Gender Violence Act claim cannot be asserted against a corporation, Count IV is dismissed by the Court. Defendant's motion to compel Plaintiff to arbitration is granted as to Counts I through III.[2] Doc.

---

[1] One motion (Doc. [24]) compels two separate opt-in individuals, D. Dixon and A. Vega, to arbitration.

[2] Prior to working at Defendant's establishment, Plaintiff Rattunde signed the following agreements, all of which included arbitration provisions or incorporate by reference an arbitration provision: (1) Choice of

[8]. Plaintiff's motion for conditional class certification and issuance of notice pursuant to 29 U.S.C. § 216(b) (Doc. [20]) is denied as moot and the proceeding is stayed pending arbitration for the reasons outlined below.

## A. Plaintiff Rattunde's Illinois Gender Violence Act Claim (Count IV)

In Count IV, Plaintiff asserts a claim under the Illinois Gender Violence Act, and according to Plaintiff, this count prevents compelling the case to arbitration under the Ending Forced Arbitration Act. Before proceeding to that issue, the Court had some concern as to whether the Illinois Gender Violence Act count asserted a plausible claim as to which relief could be granted because the Act has generally been inapplicable to claims against a corporate entity. Accordingly, the Court requested supplemental briefing, which provided the parties an opportunity to address the issue. Plaintiff Rattunde argues that the Illinois Gender Violence Act applies to this case because: (1) as initially drafted, the Illinois Gender Violence Act applied to corporations; (2) alternatively, the employer amendment, effective January 1, 2024, saves this action; or (3) the employer amendment should apply retroactively. All of these arguments are unavailing.

The Illinois Gender Violence Act initially created a cause of action against "a person or persons perpetrating [] gender-related violence." 740 Ill. Comp. Stat. 82/10. It was only later amended, effective January 1, 2024, to add employer liability for "gender-related violence committed in the workplace by an employee or agent of the employer." 740 Ill. Comp. Stat. 82/11. The controlling legal principle for statutory interpretation is that courts must follow and apply the plain meaning of the text. *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992); *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004). Here, the pre-amendment text notes that an action may be brought against "a person or persons" who perpetuated gender-related violence. 740 Ill.

---

Status Contract; (2) Club/Performer Contract; (3) Entertainer License Agreement; (4) Dance Performance Waiver and Release; and (5) Performer Class Action Waiver Agreement. *See* Doc. [8] at Exhibits 1-5.

Comp. Stat. 82/10. The Act notes that the person(s) "either personally commit[ed] the gender-related violence or personally encourage[ed] or assist[ed] the act or acts of gender-related violence." *Id.* The plain language of the pre-amendment text does not give any indication that the term "person" includes a corporate employer, and numerous courts in this district have interpreted the use of the terms "personally committed" or "personally encouraged" to only mean natural persons. *See Fuesting v. Uline, Inc.*, 30 F. Supp. 3d 739, 742-43 (N.D. Ill. Mar. 21, 2014); *Doe v. Lee*, 943 F. Supp. 2d 870, 879 (N.D. Ill. May 6, 2013); *Lewis-Bledsoe v. Ford Motor Co.*, 2022 WL 2316320, at **2-3 (N.D. Ill. June 28, 2022); *Mundo v. City of Chicago*, 2021 WL 3367160, at **4-5 (N.D. Ill. Aug. 3, 2021); *Flood v. Washington Square Rest., Inc.*, 2012 WL 6680345, at **2-3 (N.D. Ill. Dec. 21, 2012); *Fleming v. Fireside West, LLC*, 2012 WL 6604642, at **2-4 (N.D. Ill. Dec. 18, 2012).

In cases sitting in diversity, such as this case, district courts are directed to apply the law as it believes the highest court of the state, here Illinois, would. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). When not addressed by the high court, decisions from appellate courts become authoritative, unless there are compelling reasons to doubt that the Illinois Appellate Court stated the law correctly. *AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). The Illinois Supreme Court has not decided whether a corporation was a person under the Illinois Gender Violence Act, prior to the Illinois legislature's employer amendment. Plaintiff therefore argues that this Court should follow the Illinois Appellate Court's holding in *Gasic v. Marquette Management*, which held that "under some circumstances, a legal entity, such as a corporation, can act personally" within the meaning of the Illinois Gender Violence Act. 2019 IL App (3d) 170756, ¶ 16 (cleaned up). In coming to that conclusion, an Illinois Appellate Court found that the context, language, and legislative history of the statute indicated

that the idea corporate personhood has been rapidly expanding. *Id.* at ¶¶ 14-17. Thus, the Illinois Appellate Court found that, at times, a corporation could act personally for purposes of civil liability. *Id.* Without any additional analysis, certain district courts have followed *Gasic* and refused to dismiss Illinois Gender Violence Act claims simply because an Illinois Appellate Court concluded that a corporation can be liable under certain circumstances. *See Nor v. Alrashid*, 2022 WL 815542, at *5 (N.D. Ill. Mar. 17, 2022); *Solinski v. Higher Learning Comm'n*, 2021 WL 1293841, at *4 (N.D. Ill. Apr. 7, 2021); *Doe v. City of Chicago*, 2020 WL 1675639, at *4 (N.D. Ill. Apr. 6, 2020).

However, as outlined by courts in this district in *Mundo v. City of Chicago* and *Lewis-Bledsoe v. Ford*, there are compelling reasons to doubt that the Illinois Appellate Court's holding in *Gasic* stated the law correctly and to instead find that the statute applies only to natural persons. *Mundo*, 2021 WL 3367160, at *5 (*citing* 2019 IL App (3d) 170756); *Lewis-Bledsoe*, 2022 WL 2316320, at **2-3. The district court in *Mundo* analyzed whether the Illinois Gender Violence Act applied against a municipality. First, the district court in *Mundo* noted that the Illinois Supreme Court previously held that the "plain and ordinary meaning of the term person is an individual human being." *Id.* at *5 (*citing People v. Christopherson*, 899 N.E.2d 257, 260 (Ill. 2008) (cleaned up)). Further, the district court observed that "in Illinois, the general rule is that absent a statutory definition that expands the meaning of person, that term refers to an individual, not a legal entity." *Id.* at *5 (cleaned up). As explained by the district court, the text of the Illinois Gender Violence Act does not suggest that the statute's drafters wanted to expand the definition of "person" to legal entities. *Id.* at *5. The district court also noted the reference to "persons who *personally* commit or *personally* encourage gender-related violence" is evidence of the legislature's intent for this to

4

apply only to natural persons, as corporations do not act personally but instead through agents. *Id.* (cleaned up); *see also Flood*, 2012 WL 6680345, at *2.

The district court in *Lewis-Bledsoe* concurred with the reasoning in *Mundo*. The district court began by analyzing Illinois' Statute on Statutes which stated that "persons may extend and be applied to bodies politic and corporate as well as individuals." 2022 WL 2316320, at *2 (cleaned up). The district court noted that the Illinois Appellate Court in *Gasic* had also found that a legal entity could be a person and act "personally" in the context of the Illinois Gender Violence Act. *Id.* at *3. However, the district court, agreeing with the reasoning in *Mundo*, found that the Illinois Supreme Court had held that: (1) the plain and ordinary meaning of "person" is an individual human being; (2) absent a statutory definition expanding the term "person," the term referred to an individual not a legal entity; and (3) nothing in the Illinois Gender Violence Act suggested that drafters intended to deviate from this rule and expand the term "person" to legal entities. *Id.* at *3.

Other courts in this district have also noted that there was no discussion in the initial legislative sessions about whether the term "person" applied to natural persons or extended to corporations. *See Flood*, 2012 WL 6680345, at *2. In analyzing the term "person" in the context of other Illinois statutes, the district court in *Flood* found that, while other Illinois statutes such as the Illinois Hate Crimes Act and Open Meetings Act provided for corporate liability, the presence of the term "personally" in the Illinois Gender Violence Act was dispositive. *Id.* at *3. The district court recognized that the Illinois legislature's inclusion of the word "personally" showed that this act was meant to only apply to natural persons, as it was inconceivable how a corporation could act personally to perpetrate acts of gender-related violence. *Id.* at *3; *see also Fuesting*, 30 F. Supp. 3d at 743 (finding that a corporation cannot personally perpetrate gender violence as they act through agents). Other courts in this district have since found this reasoning persuasive, but have

5

chosen to find that plaintiffs failed to sufficiently allege a corporation personally encouraged or assisted in the gender-related violence sufficient to state a claim under the Illinois Gender Violence Act. *See Frank v. Anchez, Inc.*, 2022 WL 4325406, at **2-3 (N.D. Ill. Sept. 19, 2022); *Butler v. Ford Motor Co.*, 2022 WL 4448724, at **5-8 (N.D. Ill. Sept. 23, 2022). This Court agrees with the reasoning and analysis in *Mundo*, *Lewis-Bledsoe*, and *Flood* and finds compelling reasons to doubt the *Gasic* holding because it is inconsistent with the plain text of the statute. As Defendant is not a natural person but a legal entity, it is not covered under the pre-amendment Illinois Gender Violence Act.

Plaintiff next contends that the January 1, 2024 amendment should apply to this case as it clearly states that corporate employers can be held liable for gender-related violence committed in the workplace by employees or agents. 740 Ill. Comp. Stat. 82/11. Since a class has not yet been certified, the Court only considers Plaintiff Rattunde's individual claims, not allegations regarding other potential class members. *See, e.g.*, *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994) ("An individual bringing an action on behalf of a class must be a member of the class and possess the same interest and suffer the same injury as a member of the class." (cleaned up)). The supplemental brief Plaintiff provided states that the amended statute "went into effect after Plaintiff's last date of employment with Defendant." Doc. [49] at 12. This is corroborated by the Complaint, which states that Plaintiff Rattunde was employed with Defendant in "2016/2017, and then again from 2019 until February 2023." Doc. [1] at ¶ 5. The effective date for the employer amendment to the Illinois Gender Violence Act is January 1, 2024. 740 Ill. Comp. Stat. 82/11. This means that claims cannot be brought under this amendment unless they accrued on or after January 1, 2024. The employer amendment does not apply to Plaintiff's claims, because she was not an employee of Defendant at any point after the amendment went into effect.

In a final attempt to bolster her argument, Plaintiff contends that the employer amendment to the Illinois Gender Violence Act should apply retroactively. Plaintiff and Defendant agree that Illinois follows the retroactivity analysis laid out by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *See Perry v. Dep't of Fin. & Prof'l Regul.*, 2018 IL 122349, 106 N.Ed.3d 1016, 1026 (Ill. 2018). To determine a statute's retroactivity, courts must first determine whether the legislature expressly prescribed the temporal reach of the new law. *Landgraf*, 511 U.S. at 280. If there is indication of a temporal reach, that should be given effect unless doing so would be constitutionally prohibited. *Perry*, 106 N.E.3d at 1026. If there is no such express provision of temporal reach, then the court considers whether retroactive application would increase a party's liability, impair rights, or impose new duties. *Landgraf*, 511 U.S. at 280. Here, there is an express temporal reach because the Illinois legislature enacted the amendment to take effect on January 1, 2024. 740 Ill. Comp. Stat. 82/11. There is nothing in the statute that allows for retrospective application to cases prior to the effective date and therefore, there is a presumption against retroactivity. *See Siddiqui v. Holder*, 670 F.3d 736, 749 (7th Cir. 2012) (finding a presumption against retroactivity because Congress did not indicate the statute could apply retroactively). There is also nothing constitutionally prohibiting the Illinois legislature limiting the effective date of the statute to January 1, 2024 onward.

Retroactive application of the amended statute would also increase Defendant's liability, impair rights, or impose new duties. Prior to the employer amendment, a person was liable for gender-related violence if they personally encouraged or assisted in the acts. *See* 740 Ill. Comp. Stat. 82/10. The employer amendment to the Illinois Gender Violence Act outlined that employers are "liable for gender-related violence committed in the workplace by an employee or agent of the employer when the interaction giving rise to the gender-related violence arises out of and in the

course of employment with the employer." *See* 740 Ill. Comp. Stat. 82/11. The amendment also states that liability only extends to gender-related violence that occurs while the employee or agent was directly performing job duties, and the gender violence was the proximate cause of the injury. *Id.* An employer is only liable if the employer failed to supervise, train, or monitor the employee who engaged in the gender-related violence or failed to investigate complaints or reports directly provided to a supervisor, manager, owner and failed to take remedial measures in response to the complaints. *Id.* This amendment plainly increases the liability of employers for acts of gender-related violence in the workforce. It also imposes new duties on them to supervise, train and monitor employees, as well as investigate complaints and reports of gender-related violence. The Seventh Circuit has found that, when a statute attaches new legal consequences to events completed before its enactment, retroactive application impairs the rights of a party. *See Siddiqui*, 670 F.3d at 749. The new requirements, rights, and duties imposed on employers by the employer amendment prohibits retroactive application.

Plaintiff furthers her retroactivity argument by pointing to the legislative history of the employer amendment to the Illinois Gender Violence Act and arguing that not allowing retroactive application would be manifestly unjust. Regarding the legislative history, Plaintiff notes that in speeches to the Illinois House of Representatives about the employer amendment, representatives noted that there was a lack of clarity surrounding whether the Act applied to employers. *See* Illinois House Transcript, 2023 Reg. Sess. No. 26 (Mar. 23, 2023). Plaintiff purports that, as the employer amendment was simply clarifying ambiguity, retroactive application is proper. In support of her argument, Plaintiff cites *Matviuw v. Johnson*, 444 N.E.2d 606, 632-33 (Ill. App. Ct. 1982). The Illinois Appellate Court in *Matviuw* discussed whether the Illinois legislature can amend statutes prospectively to correct a judicial interpretation at odds with legislative intent. *Id.* In that case, the

defendant contended that the legislature amended the statutory language making certain statements unavailable for use by physicians in defamation lawsuits. *Id.* The Illinois Appellate Court found that retroactive application is only proper when the amendment does not change the law but serves to clarify it. *Id.* But in *Matvium*, the Court found that the changes there were not enacted to merely clarify an existing ambiguity but to change the law. *Id.* Similarly, the employer amendment to the Illinois Gender Violence Act also did not merely clarify an existing ambiguity but added an entire section which delineated the extent of employer liability under the Act, as outlined above. Additionally, because the amendment imposed new liability and duties on employers, it would be manifestly unjust to apply this statute retroactively. *See id.*; *Landgraf*, 511 U.S. at 280. Thus, for all of the above reasons, the Court finds the Illinois Gender Violence Act does not apply retroactively.

Since the Illinois Gender Violence Act cannot be asserted against a corporation in its pre-amendment form, and no individual defendants are named, the Court dismisses Count IV. While Defendant has not moved for dismissal pursuant to Rule 12(b)(6), district courts have the authority to *sua sponte* dismiss for failure to state a claim when the parties are given notice and an opportunity to respond. *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1183-84 (7th Cir. 1989); *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). Here, the Court has given both of the parties notice and an opportunity to respond by holding a motion hearing on September 9, 2024, identifying the issue in a written order, and further ordering briefing about whether the Illinois Gender Violence Act claim could be asserted against a corporation. *See* Docs. [47][48]. Both of the parties addressed this issue in their supplemental briefings, thus allowing this Court to properly consider the issue with the parties' input and make a ruling dismissing the claim. *See* Docs. [49][50]. Moreover, the Court dismisses Count IV with prejudice. There is no means by which

Plaintiff can state a claim as a matter of law against Defendant under the Illinois Gender Violence Act, as the Act as originally drafted did not cover corporations, and the amended statute allowing for employer liability does not apply retroactively, nor does it cover Plaintiff's Illinois Gender Violence Act claim because all employment ceased before the amendment's effective date. The Seventh Circuit has held that a court need not provide leave to amend a complaint when amendment would be futile, as it is here, because no claim can be stated under the circumstances. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 524 (7th Cir. 2015). Thus, Count IV is dismissed with prejudice.

## B. Defendant's Motion to Compel Counts I through III

As Count IV is dismissed, the Court need not address Plaintiff's argument that the Ending Forced Arbitration Act prevents compelling arbitration as a result of the Illinois Gender Violence claim. Instead, the operative analysis now is whether the Federal Arbitration Act requires the Court to compel Counts I through III to arbitration. The Federal Arbitration Act authorizes[3] federal district courts to compel arbitration on a party's motion upon findings of: (1) an enforceable written agreement to arbitrate (evaluated like any contract); (2) a dispute falling within the scope of the agreement, and (3) a refusal to arbitrate. *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017); 9 U.S.C. § 4. A court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C.

---

[3] This authority is contingent on whether the court would have jurisdiction in the matter independent of the arbitration agreement. 9 U.S.C. § 4; *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009). The Complaint raises a federal claim for failure to pay minimum wage in violation of the Fair Labor Standards Act. Count I is subject to federal jurisdiction under 28 U.S.C. § 1331. The two remaining counts arise out of the same employment and are so related that they form part of the same case and controversy. 28 U.S.C. § 1367. Thus, this Court properly has subject matter jurisdiction.

§ 3; *Smith v. Spizzirri*, 601 U.S. 472, 473-74 (2024). Plaintiff does not dispute that the actions brought fall within the scope of the arbitration agreements. She is also refusing to arbitrate. Plaintiff's sole argument is that the agreements she signed are not valid enforceable written agreements to arbitrate.

Under the Federal Arbitration Act, a contract is not valid if there is a state law that invalidates the agreement. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 507 (2018). In Illinois, a contract is not enforceable if it is unconscionable. *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 99-100 (Ill. 2006). Unconscionability can be either procedural, substantive, or a combination of both. *Id.*

Plaintiff begins by asserting that the agreements are procedurally unconscionable because there was no meaningful opportunity to reject or review the agreements. Procedural unconscionability arises during the process of forming the contract and deprives a party of a meaningful choice. *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 23 (Ill. 2006). It refers to a situation where a contract term is so difficult to find, read, or understand that a plaintiff could not be aware what they agreed to. *Razor*, 222 Ill. 2d at 100. Procedural unconscionability also considers lack of bargaining power. *Id.* "Duress, sufficient to prevent the creation of a contract, is established by a showing that the circumstances left the complaining party bereft of the quality of mind essential to the making of a contract, such that he is unable to exercise his free will." *Greenhill v. RV World, LLC*, 2024 WL 1345655, at *4 (S.D. Ill. Mar. 29, 2024) (*citing Alexander v. Standard Oil Co.*, 368 N.E.2d 1010, 1016 (Ill. App. Ct. 1977)) (cleaned up). Plaintiff points to affidavits stating that she was forced to sign paperwork before starting work creating an imperative to finish quickly so she could earn money, that she was not allowed to bring the contracts home to review them, and that she was told where to sign and input information. But Plaintiff does not

allege that whatever pressure Defendant employed deprived her of normal quality of mind or ability to exercise free will. *See id.* at \*5 (finding no procedural unconscionability when plaintiff was threatened with discipline if onboarding employment documents were not completed quickly, plaintiff was not explained the documents, the arbitration clause was prominently placed, easy to read and understand, and the agreement was only 17 pages). Here, Plaintiff could have taken more time to sign and review the paperwork forgoing an hour or so of work, walked away completely, asked questions, or chosen to work at a different establishment.

Courts in this district have found similar situations to not rise to the level of procedural unconscionability. In *Sanchez v. CleanNet USA, Inc.*, the district court found that a contract of adhesion where terms are nonnegotiable and presented in fine print language that an average individual might not fully understand are facts of modern life and are not necessarily procedurally unconscionable. 78 F. Supp. 3d 747, 754 (N.D. Ill. Jan. 15, 2015). Further, even when the defendant had failed to translate the entire agreement into the plaintiff's native language of Spanish, it did not render the agreement unenforceable. *Id.* The *Sanchez* court also noted that an arbitration clause was not procedurally unconscionable when it was "buried" in an over fifty-page document. *Id.* at 755. Similarly, in *Montgomery v. Corinthian Colleges,* the plaintiffs argued that the agreements they signed were procedurally unconscionable because most plaintiffs had at most a high-school education and could not understand the legalese of the documents or know the significance of what they were agreeing to. 2011 WL 1118942, at \*3 (N.D. Ill. Mar. 25, 2011). The district court found that the agreement was not procedurally unconscionable because it was neither difficult to read nor hidden. *Id.* at \*4. In that case, the agreement at issue included headings, important provisions were boldfaced, and the font was a normal size. *Id.* Additionally, the agreements were not unreasonably long when they totaled eleven pages and because there were

12

options to opt-out of certain provisions, that weighed against finding that the contract was procedurally unconscionable. *Id.* at **4-5. Here, the contracts were written in English (Plaintiff's native language), in normal size font, with headings. Important provisions, such as the arbitration agreement, were boldfaced to draw a reader's attention. The five agreements combined total only seven pages and included options for Plaintiff to "Accept" or "Reject" certain provisions, such as the arbitration provision and the class action waiver. As in *Sanchez* and *Montgomery*, this does not rise to the level of procedural unconscionability.

Plaintiff's education level also precludes a finding of procedural unconscionability. As discussed above, Plaintiff does not assert that the provisions in the contract were "so difficult to find, read, or understand" that she was unaware of what she was agreeing to. *Razor*, 222 Ill. 2d at 100; *Brown v. Luxottica Retail N. Am. Inc.*, 2010 WL 3893820, at **2-3 (N.D. Ill. Sept. 29, 2010). Like *Montgomery*, Plaintiff is a high school graduate who does not allege any inability to read or understand any part of the contracts she signed. 2011 WL 1118942, at **3-4. Instead, Plaintiff argues that she did not understand that she waived her right to a jury trial until consulting with an attorney. Plaintiff could have sought consultation prior to signing the agreements. Further, as held by the Seventh Circuit, defendants have no obligation to explain arbitration provisions, and even if plaintiffs do not read provisions, they can still be bound by them. *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997); *see also Sanchez*, 78 F. Supp. 3d at 755 (finding defendants were not under an obligation to translate an agreement into a plaintiff's native language or explain every term in the native language). None of the above allegations meet the high standard for finding the agreements procedurally unconscionable.

The agreements are also not substantively unconscionable. Substantive unconscionability occurs when contract terms are inordinately one-sided in a party's favor. *Razor*, 222 Ill. 2d at 100.

"Where the cost of arbitration is so high compared to the expected recovery that arbitration cannot serve as a meaningful remedy, the agreement to arbitrate will be substantively unconscionable." *Brown*, 2010 WL 3893820, at *3. Plaintiff's primary argument hinges on the idea that the agreements set forth oppressive costs for arbitrating. She specifies that the arbitration provision in the Club/Performer Contract is silent with respect to costs except to state that "Owner shall pay any cost required by law." The Court does not see how this is ambiguous or so inordinately one-sided in a party's favor. The arbitration clause in that contract notes that "[t]he arbitrator shall be permitted to award any relief available in a Court. Owner shall pay any cost required by law." Doc. [8] at Exhibit 2. Thus, if the law requires Defendant to pay the full cost of arbitration, or split the costs, it will do so. This does not change the costs of arbitration, nor make arbitration oppressively expensive.

Plaintiff also notes that the Dance Performance Waiver and Release requires them to pay the entire cost of arbitration. The Dance Performance Waiver and Release clearly states that "[e]ach party shall pay its own costs and the Entertainer shall bear the costs associate with the neutral arbitrator." Doc. [8] at Exhibit 4. Courts may deny arbitration if one party would be saddled with prohibitive costs. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000); *see also Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003). The party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs and that it is financially incapable of meeting the costs. *Livingston*, 339 F.3d at 557. There is no bright line for determining when arbitration costs will be prohibitive, but the Seventh Circuit has outlined two pertinent questions: (1) "how the party's financial situation will be factored into an assessment of the arbitration costs under this hardship provision," and (2) "how the costs will compare between

litigating in the courts versus proceeding in arbitration." *Baumann v. Finish Line, Inc.*, 421 Fed. App'x 632, 635 (7th Cir. 2011) (cleaned up).

Plaintiff Rattunde argues that, as a part-time student who makes only slightly above minimum wage, she cannot afford the filing fee, the fee for cases that proceed to the first hearing, or the costs of paying the arbitrator as they often charge hundreds of dollars per hour. However, as the district court in *Sanchez* held, these arbitration costs are not prohibitively high. *See Sanchez*, 78 F. Supp. 3d at 755-56 (holding a provision that requires mediation where both the parties split costs prior to arbitration and requires the filing party pay the filing fee is not substantively unconscionable). In the Dance Performance Waiver and Release, the parties agreed to use IgniteADR.com or, if that is no longer available, AAA Arbitration. As Plaintiff notes, IgniteADR.com is no longer active and thus the dispute must go to AAA Arbitration. The AAA Rules allow for filing and administrative fees to be reduced in cases of hardship and allow an arbitrator to assess the arbitrator's fees and expenses against any specified party. *See Sanchez*, 78 F. Supp. 3d at 756 n.1 (finding no substantive unconscionability when the AAA rules allow filing and administrative fees to be reduced in cases of hardship and gives arbitrators the right to assess them against any specified party); *see, e.g.*, AAA Rule 53 ("The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees"); AAA Rule 54 ("All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties."). The parties may also agree to hire a lower cost arbitrator. And Counts I through III allow for an award of attorneys' fees if the Plaintiff wins, further potentially lowering the cost of

arbitration. *See* 29 U.S.C. § 216(b) (Count I); 820 Ill. Comp. Stat. 105/12(a) (Count II); 820 Ill. Comp. Stat. 115/14(a) (Count III). Plaintiff also fails to compare the costs of proceeding in arbitration to litigation, and arbitration proceedings can sometimes be less costly than prolonged federal court litigation.

Plaintiff further relies on *Plattner v. Edge Solutions, Inc.* to support her argument that the agreement is substantively unconscionable because the costs imposed on her makes arbitration cost-prohibitive. 2004 WL 1575557, at *1 (N.D. Ill. Apr. 1, 2004). In *Plattner*, the plaintiff submitted an affidavit noting that he had financial difficulties, that he could not afford the travel costs from Illinois to New York, that he could not afford arbitration, and that the claim being brought was worth less than $5,000. *Id.* at *1. *Plattner* is distinguishable. Here, the arbitration clauses allow for an online arbitration proceeding or a proceeding in Chicago, Illinois – home district for Plaintiff. This will limit the cost of any potential travel fees. Plaintiff has also not alleged that the claims being brought are worth less than the cost of arbitration, nor is it clear that it would cost less to litigate the claims before this Court.

Plaintiff's final argument regarding unconscionability is that the class action waivers contained in Defendant's contracts are also substantively unconscionable. As the Federal Arbitration Act applies, Supreme Court precedent precludes Plaintiff's argument that the class action waiver is unconscionable under Illinois law. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (holding that the Federal Arbitration Act preempts state law "conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures"); *Epic Systems*, 584 U.S. 497 (applying the logic of *Concepcion* to a FLSA collective action). Under the Federal Arbitration Act, Defendant "can compel arbitration on an individual basis regardless of whether the class action waiver is considered unconscionable under Illinois

law." *See Agha v. Uber Techs., Inc.*, 2024 WL 1719348, at *7 (N.D. Ill. Apr. 22, 2024) (*citing Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 187 (2019)). Even then, the class action waiver is not substantively unconscionable under Illinois law. Plaintiff agrees that the Illinois Supreme Court has held that class action waivers are not *per se* unconscionable. *Kinkel*, 223 Ill. 2d at 48. Instead, the enforceability is determined on a case-by-case basis considering the totality of the circumstances. *Id.* at 42. "Under Illinois law, a class-action waiver will not be held substantively unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim asserted in a cost-effective manner." *Montgomery*, 2011 WL 1118942, at *5 (*citing Kinkel*, 223 Ill. 2d at 40-41). Plaintiff had a meaningful opportunity to reject the class action waiver. In the Club/Performer Contract, the class action waiver paragraph allowed her a choice where she could have initialed "Accept" or "Reject" for just that clause. Doc. [8] at Exhibit 2. Further, Plaintiff could have rejected that term when the contract was re-signed annually. Plaintiff therefore must arbitrate her claims individually. Counts I through III are compelled to arbitration.

## C. Stay of Counts I through III

Finally, the Court addresses Defendant's request to dismiss or stay the case pending arbitration. The Supreme Court in *Smith v. Spizzirri* determined that Section 3 of the Federal Arbitration Act required the court to "stay the trial of the action until [the] arbitration" has concluded. 601 U.S. at 473-74 (*citing* 9 U.S.C. § 3). District courts may not dismiss actions when a party has requested a stay. *Id.* Here, Defendant has requested that the Complaint be dismissed or, alternatively, a stay pending arbitration pursuant to 9 U.S.C. § 3. The Court, seeing no separate reason to dismiss the case, stays the case regarding Counts I through III pending arbitration.

17

### D. Opt-in Individuals

Finally, the Court addresses the motions of the three individuals who filed notice of opt-in consent forms on the docket. The Seventh Circuit decision in *Hollins* is instructive. *See Hollins v. Regency Corp.*, 867 F.3d 830, 834 (7th Cir. 2017). There, numerous individuals filed consent forms indicating they would like to opt in to the Fair Labor Standards Act action prior to class certification. *Id.* at 832. The district court did nothing with the forms and went on to consider summary judgment on the individual plaintiff's claim, denying their motion for class certification as moot. *Id.* The Seventh Circuit held that an individual does not become a party to a case simply by filing a consent to opt-in before the court has conditionally certified the class. *Id.* at 833. Thus, the Seventh Circuit affirmed the district court's decision to proceed to the merits of the individual plaintiff's claim, as the opt-in individuals did not stand in the way of making an individual determination regarding the claims in the complaint. *Id.* at 834. As in *Hollins*, this Court made a ruling regarding Plaintiff's individual claims. Thus, Plaintiff's motion for class certification is moot. *See* Doc. [20]. Moreover, pursuant to the Court's ruling on Defendant's motion to compel Plaintiff Rattunde to arbitration, Defendant's motions to compel the opt-in individuals to arbitration are also moot as they are not parties before this Court. *See* Docs. [24][41].

**Conclusion**

For the reasons stated above, Count IV is dismissed by this Court with prejudice for failure to state a claim. Defendant's motion to compel Plaintiff Rattunde to arbitration is granted in part as to Counts I through III. Doc. [8]. Pursuant to 9 U.S.C. § 3, the case is stayed as to Counts I through III. Plaintiff Rattunde's motion for conditional class certification and issuance of notice pursuant to 29 U.S.C. § 216(b) is denied as moot. Doc. [20]. Defendant's motions to compel the three opt-in individuals to arbitration [24][41] are denied as moot.

**SO ORDERED.**

Dated: October 23, 2024

_____
Sunil R. Harjani
United States District Judge